UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUJIT CHOUDHRY,

    Plaintiff,

    v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

    Defendants.

Case No. 16-cv-05281-RS

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff Sujit Choudhry seeks to enjoin pending disciplinary proceedings initiated by the University of California ("the university" or "UC") in response to allegations of sexual harassment. Choudhry argues that the proceedings violate his constitutional rights because they are based on the same complaint that the university already investigated and resolved last year. Regardless of how history may judge the manner in which the university has handled this case, federal intervention at this stage is not warranted. The UC disciplinary process is an ongoing state judicial proceeding that implicates important state interests and offers adequate opportunities for Choudhry to raise his constitutional challenges. Abstention is proper under *Younger v. Harris*, 401 U.S. 37 (1971). Choudhry's motion therefore must be denied.

## II. FACTUAL BACKGROUND

Choudhry became dean of the UC Berkeley School of Law ("Berkeley Law") in June 2014. In March 2015, Tyann Sorrell, his executive assistant, complained that Choudhry's verbal and physical behavior upset and distressed her. Sorrell's complaint triggered an investigation into Choudhry's conduct. The UC's Office for Prevention of Harassment and Discrimination ("OPHD") interviewed Sorrell, Choudhry, and other witnesses, reviewed documentary evidence,

and compiled a report. The OPHD concluded that Choudhry violated the sexual harassment provisions of the UC Policy on Sexual Harassment and Sexual Violence and submitted its report to Executive Vice Chancellor Claude Steele for review. After discussing the report with other administrators, Steele reduced Choudhry's salary, required Choudhry to apologize to Sorrell and to attend training on appropriate behavior, and announced an intent to monitor Choudhry's conduct. On July 30, 2015, Steele communicated his decision by letter to Choudhry and indicated that he could be subject to further disciplinary action, "up to and including termination as Dean," if he violated the university's policy again. Choudhry Decl., Ex. 16. Choudhry complied with Steele's plan of action and continued as dean.

On March 8, 2016, Sorrell filed a law suit against Choudhry and the university alleging sexual harassment and retaliation. Shortly thereafter, Choudhry offered to resign as dean which Steele accepted. On March 10, 2016, Steele and Chancellor Nicholas Dirks announced Choudhry's resignation in a statement to the Berkeley Law community. They said: "we are under no illusion that a resignation could or even should bring this matter and broader, related issues to a close" and "we must move in the direction of stronger sanctions." Reply at 7.

UC President Janet Napolitano also responded publicly to Sorrell's suit. On March 9, 2016, the *Sacramento Bee* published an editorial regarding the allegations against Choudhry and UC astronomy professor Geoff Marcy, who was reportedly "forced to step down [due to] charges of serial groping." Mehta Decl., Ex. 2. The editorial quotes Napolitano as saying: "UC deans are normally disciplined at the campus level," but "[p]eople ought to be able to come to work without being groped, as a minimal standard." *Id.* On March 11, 2016, Napolitano wrote to Dirks to ask that he institute disciplinary proceedings against Choudhry "through the Privilege and Tenure process" and ensure that Choudhry not return to campus for the remainder of the term. *Id.*, Ex. 1.

On March 15, 2016, Vice Provost for Faculty Janet Broughton notified Choudhry that the OPHD report had been referred to her for assessment under the Faculty Code of Conduct, and that she would be appointing one or two faculty members to investigate possible violations of the code. At the close of that investigation, around September 15, 2016, the university filed disciplinary

charges which were referred to the Academic Senate Committee on Privilege and Tenure.

The disciplinary charges are pending. Pursuant to Academic Senate Bylaw 336, the Privilege and Tenure Committee will appoint a Hearing Committee, consisting of at least three members—not including any members who cannot "objective[ly] consider[]" the case—to review the charges, hear the evidence and arguments, and make a recommendation to the Chancellor. Mehta Decl., Ex.14 ("Hearing Committee members shall disclose to the Hearing Committee any circumstances that may interfere with their objective consideration of the case and recuse themselves as appropriate.") Prior to the formal hearing, the chair of the Hearing Committee will schedule a conference for both sides to exchange a list of witnesses and copies of exhibits to be presented at the hearing. At the hearing, which will be recorded, "each party shall have the right to be represented by counsel, to present its case by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross examination as may be required for a full and true disclosure of the facts." *Id.* The Hearing Committee "may, upon an appropriate showing of need by any party or on its own initiative, request files and documents under the control of the administration." *Id.* At the hearing, "the Chancellor or Chancellor's designee has the burden of proving the allegations by clear and convincing evidence." *Id.* If the Hearing Committee makes recommendations adverse to Choudhry, he will have a further opportunity, after the hearing, to request that the recommendations not be adopted.

In the meantime, over the course of the spring and summer, both Steele and Dirks resigned from their posts, citing personal reasons. Then, in August 2016, Choudhry, through his counsel, informed the university that he would return to his office at Berkeley Law in the fall. On September 6, 2016, Choudhry published an open letter in the *Daily Californian* telling his side of the story. That day, there was a protest at the law school responding to Choudhry's letter and, two days later, Berkeley Law students, faculty, and staff members attended a town hall meeting to discuss the situation. In that meeting, Choudhry says, students accused him of committing sexual assault and labeled him a predator; sentiments which he claims the university administrators validated. On September 15, 2016 the university informed Choudhry that his office would be

moved from the main law school building to a different university building.

Choudhry remains a tenured faculty member. He is not currently scheduled to teach, but he has been assigned research, administrative, and service projects. He maintains an office on campus, although administrators have encouraged him to work remotely whenever possible. He did not receive summer funding, but he continues to receive his salary and administrative support.

On September 15, 2016, Choudhry filed suit against the UC, under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, claiming violations of his constitutional rights and racial discrimination. Choudhry alleges due process violations based on deprivations of his property and liberty interests. Specifically, he claims a property interest in the finality guaranteed by Steele's July 2015 "settlement" and liberty interests in teaching and being free from unfair stigma. He also alleges violations of the equal protection clause and racial discrimination because he is of South Asian descent and other employees, who are not members of a protected class, "have been found to have committed actual predatory conduct yet been treated more favorably." Comp. ¶ 170.[1]

### III. DISCUSSION

Choudhry moves for a preliminary injunction to stop the university from completing the pending disciplinary proceedings. Such proceedings, Choudhry argues, will cause him further, irreparable harm if allowed to continue. In opposition, the university advances two arguments. First, it argues abstention is proper under *Younger v. Harris*, 401 U.S. 37 (1971). Second, it contends Choudhry has not established entitlement to an injunction. Because *Younger* abstention is appropriate, the second argument need not be addressed.

**A. *Younger* Abstention**

In *Younger v. Harris*, the Supreme Court held that federal courts sitting in equity cannot, absent exceptional circumstances, enjoin pending state criminal proceedings. 401 U.S. at 43–54. It later extended the *Younger* principle to civil enforcement actions "akin to" criminal proceedings,

---

[1] The amended complaint, filed while this motion was pending, also includes a claim for First Amendment violations.

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 16-cv-05281-RS

4

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975), and to suits challenging "the core of the administration of a State's judicial system." *Juidice v. Vail*, 430 U.S. 327, 335 (1977). In *Middlesex County Ethics Committee v. Garden State Bar Association*, the high court identified three factors that together warrant abstention: (1) "an ongoing state judicial proceeding," (2) which "implicate[s] important state interests," and (3) in which "there [is] an adequate opportunity [] to raise constitutional challenges." 457 U.S. 423, 433–434 (1982). For many years, lower courts treated these factors as the established test for *Younger* abstention.

In *Sprint Communications Inc. v. Jacobs*, ––– U.S. ––––, 134 S.Ct. 584 (2013), the Supreme Court clarified that a court should only consider the *Middlesex* factors after it has established that a state proceeding fits within the *Younger* doctrine. *Id.* at 593 ("Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest."). It held that *Younger* abstention is limited to the "three exceptional categories" of cases identified in *New Orleans Public Service, Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350, 367–68 (1989). *Id.* at 592. Those categories are: (1) "parallel, pending state criminal proceeding[s]," (2) "state civil proceedings that are akin to criminal prosecutions," and (3) state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 588.

### 1. Quasi-Criminal Proceedings

The university argues that the proceedings against Choudhry are akin to criminal proceedings, and thus fit into the second category. Choudhry disagrees. He contends that the proceedings resemble more closely a private dispute resolution than a quasi-criminal enforcement action.

Quasi-criminal proceedings have several distinguishing features. They "are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." *Sprint*, 134 S.Ct. at 592. "[A] state actor is routinely a party to the state proceedings and often initiates the action." *Id.* Additionally, the proceedings often begin with internal investigations that "culminat[e] in the filing of a formal complaint or charges." *Id.*

Comparing *Sprint* with *Middlesex* illustrates the scope of the second category. The Supreme Court found *Younger* applicable in the latter, but not in the former. In *Sprint*, a national telecommunications service provider submitted its fee dispute with a local telecommunications carrier to a state agency, the Iowa Utility Board ("IUB"). In *Middlesex*, a New Jersey state ethics committee initiated disciplinary proceedings against an attorney. The Supreme Court found the IUB's adjudicative authority in *Sprint* "was invoked to settle a civil dispute between two private parties, not to sanction Sprint for commission of a wrongful act." *Id.* at 593. By contrast, in *Middlesex*, the ethics committee proceedings were quasi-criminal because "an investigation and formal complaint preceded the hearing, an agency of the State's Supreme Court initiated the hearing, and the purpose of the hearing was to determine whether the lawyer should be disciplined for his failure to meet the State's standards of professional conduct." *Id.*; *see also Middlesex,* 457 U.S. at 438 (Brennan, J., concurring in judgment) (noting the "quasi-criminal nature of bar disciplinary proceedings"). The UC proceedings bear the hallmarks of a quasi-criminal proceeding outlined in *Sprint*. The UC, a state institution, initiated the proceedings. A preliminary investigation preceded the filing of formal charges. The investigation was commenced to sanction Choudhry for alleged misconduct. Choudhry faces—at the conclusion of the process—the possibility of serious sanctions. *See Baffert v. Cal. Horse Racing Bd*. 332 F.3d 613 (9th Cir. 2003) (proceeding against trainer was quasi-criminal "[b]ecause [his] license was at issue and could be suspended or revoked").[2] Given these circumstances, the UC proceedings are indeed "akin to a criminal prosecution."

Courts have found similar disciplinary proceedings to warrant abstention. *See Cameron v. Ariz. Bd. of Regents*, 2008 WL 4838710 (D. Ariz. Nov. 6, 2008) (university faculty disciplinary proceedings); *Sanchez v. Arizona Board of Regents,* 2015 WL 6956288 (D. Ariz. Nov. 10, 2015)

---

[2] Choudhry argues that the UC "cannot make *Younger* applicable by characterizing [his] conduct as 'quasi-criminal.'" Reply at 2, n.1. Yet, in evaluating whether a state proceeding is quasi-criminal, the Supreme Court has considered whether the civil proceedings are related to criminal laws. *See, e.g., Huffman*, 420 U.S. at 604 (describing the civil nuisance action as "closely related to criminal statutes which prohibit the dissemination of obscene materials"); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (pointing out that "[t]he state authorities also had the option of vindicating these policies through criminal prosecutions").

(university student disciplinary proceedings); *Doe v. Hazard*, 152 F. Supp. 3d 859, 865 (E.D. Ky. 2016) (same); *Jackson v. Univ. of Ky.*, 2016 WL 3951084 (E.D. Ky. July 20, 2016) (same); *Williams v. Red Bank Bd. of Ed.*, 662 F.2d 1008, 1015 (3d Cir. 1981), *overruled on other grounds by Schall v. Joyce*, 885 F.2d 101, 108-109 (3d Cir. 1989) (disciplinary proceeding against public school teacher); *Ingber v. N.Y.C. Dep't of Educ.*, 2014 WL 2575780 (S.D.N.Y. June 9, 2014) (same). Choudhry claims these cases are inapposite because they were either decided before *Sprint* or they rely on pre-*Sprint* precedents. Most of the cases, however, rely on *Middlesex*. They analogize state-university and public school disciplinary proceedings to attorney discipline proceedings. *See Cameron*, at *3; *Ingber*, at *4; *Doe*, at 865. *Sprint* distinguished *Middlesex* and harmonized it—it did not overrule the holding that state attorney discipline proceedings fit within the *Younger* doctrine.

Primarily, Choudhry argues that the proceedings are not quasi-criminal because the UC is not "exercising a 'regulatory power' to revoke [his] license to practice or teach law, but is attempting to alter its own employment relationship with him." Reply at 3. In support, he relies on *ReadyLink Healthcare, Inc. v. State Compensation Insurance Fund*, 754 F.3d 754 (9th Cir. 2014). There, a nurse staffing service, ReadyLink, purchased workers' compensation insurance from the State Compensation Insurance Fund (SCIF). During an audit, SCIF found ReadyLink had failed to disclose certain payroll payments, so it billed ReadyLink for an additional premium. ReadyLink appealed that decision to the California Department of Insurance and an administrative law judge approved SCIF's premium calculation. ReadyLink then petitioned for a writ of administrative mandamus in state court and also filed a complaint against SCIF in federal court. The Ninth Circuit found that the state proceeding "plainly was not a civil enforcement proceeding"—noting that "SCIF, acting as a private party, audited and billed ReadyLink for its yearly premium" and "ReadyLink, a private party, requested agency review of that decision." *Id.* at 760. It reasoned that, "[i]f the mere 'initiation' of a judicial or quasi-judicial administrative proceeding were an act of civil enforcement, *Younger* would extend to every case in which a state judicial officer resolves a dispute between two private parties." *Id.* In *ReadyLink*, the state proceeding aimed to resolve a dispute between two parties. There was no preliminary

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 16-cv-05281-RS

7

investigation or formal charges, nor was the proceeding commenced to sanction ReadyLink. To the contrary, the state proceeding was initiated by ReadyLink.

Choudhry focuses on the nature of the parties' relationship (employer-employee), rather than on the nature of the UC proceedings. Such focus, however, contradicts the Supreme Court's reasoning in *Sprint* and other courts have already rejected it. In *Gonzalez v. Waterfront Commission of New York Harbor*, 755 F.3d 176 (3rd Cir. 2014), the Third Circuit found abstention was proper where a state agency instituted disciplinary proceedings against an employee. The agency suspected the employee had made false statements, internally investigated the falsity of the statements and, after confirming them to be untruthful, lodged a formal statement of charges against him. The court reasoned that, "[b]y filing this formal Statement of Charges, the Commission—an arm of the State of New Jersey—initiated the administrative disciplinary hearing to sanction [the employee] for his 'wrongful' conduct. This is a textbook example of a quasi-criminal action." *Id.* at 182. The same is true here.

### 2. Additional Factors

The conclusion that the university proceeding is quasi-criminal in nature, and thus fits within the *Younger* doctrine, does not end the inquiry. The three *Middlesex* factors—(i) ongoing state judicial proceeding, (ii) which implicates important state interests, and (3) in which there is an adequate opportunity to raise constitutional challenges—must also be satisfied. *See Sprint*, 134 S.Ct. at 593.

#### a. Judicial Proceedings

Choudhry contends that the UC proceedings are not judicial in nature. The UC's process, however, provides the accused notice of the charges, a hearing before an independent fact-finding panel, the assistance of an attorney or advisor, the opportunity to cross-examine witnesses, the opportunity to call witnesses and to present relevant evidence. If the panel makes recommendations adverse to Choudhry, he can present to the Chancellor additional reasons why the university should not follow the panel's recommendations. The Ninth Circuit has held that when these circumstances are present—where there is legal representation at an adjudicatory

hearing—the proceeding is "quasi-judicial." *See Baffert*, 332 F.3d at 617-18.[3]

### b. Important State Interest

Choudhry does not specifically dispute the second *Middlesex* factor, aside from his claim that the UC is acting as a private party. Generally, a state's interest in administering quasi-criminal proceedings "without interference is [] significant." *Baffert*, 332 F.3d at 618. Here, the UC proceedings implicate the state's important interests in "ensuring the smooth functioning of its state university system and the integrity of its tenure process," *Cameron*, 2008 WL 4838710, at *4, and "establishing a fair, transparent, and just disciplinary system," *Sanchez*, 2015 WL 6956288, at *3.

### c. Adequate Opportunity to Raise Constitutional Challenges

Choudhry argues that the pending proceedings provide no adequate opportunity to raise constitutional claims. He points to no reason, however, why he cannot raise those arguments before the Hearing Committee. Moreover, if the proceedings result in an adverse decision, Choudhry can challenge that decision in state court, where he may certainly raise his constitutional arguments. The Supreme Court has, on multiple occasions, affirmed decisions to abstain notwithstanding a state agency's refusal or inability to consider federal challenges in the initial administrative proceedings, where those challenges could be presented during state-court judicial review. *See, e.g., Middlesex*, 457 U.S. at 435–36; *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986).

In determining whether a federal plaintiff has an adequate opportunity to raise his constitutional claims during state-court judicial review of an administrative decision, courts ask whether "state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 425–26 (1979). In making this determination, courts consider whether state law raises

---

[3] Choudhry argues that the panel does not "adjudicate the matter," but only "makes findings, conclusions, and a recommendation" to the Chancellor. Reply at 5. Yet, the disciplinary hearing in *Middlesex* was similarly held before a panel of three or more members of the ethics committee, who were "required to prepare a written report with its findings of fact and conclusions" for the full committee. 457 U.S. at 427. The same was also true in *Cameron*, 2008 WL 4838710, at *2-3, and *Sanchez*, 2015 WL 6956288, at *1.

procedural barriers to the presentation of the federal challenges. *See id*. at 430.  Choudhry points to nothing which suggests California courts are procedurally barred from considering his federal challenges during their review of the UC's disciplinary proceedings.  In fact, California courts have repeatedly recognized their authority to consider constitutional challenges during appellate review of administrative decisions.  *See, e.g., Woodbury v. Brown-Dempsey*, 108 Cal. App. 4th 421, 429-30 (2003) (reviewing writ petition brought by students claiming school violated their due process rights in expulsion proceedings).

Choudhry argues that his case is unique because "he seeks to enforce his clear entitlement not to be subjected to a second process." Reply at 4.  The pending proceedings, he claims, are unconstitutional in their entirety.  Yet, other plaintiffs have advanced similar arguments and no exceptions have been made.  *See, e.g.*, *Williams*, 662 F.2d at 1022; *Sanchez,* 2015 WL 6956288, at *3; *Ingber*, 2014 WL 2575780, at *4.  In *Middlesex*, the attorney challenged his disciplinary proceedings as unconstitutional, arguing that the underlying disciplinary rule violated his First Amendment rights.  He claimed, like Choudhry, that "there was no opportunity in the state disciplinary proceedings to raise his federal constitutional challenge to the disciplinary rules." 457 U.S. at 435.  The Supreme Court rejected this argument.  It found that the plaintiff "failed even to attempt to raise any federal constitutional challenge in the state proceedings," and "point[ed] to nothing . . . to indicate that the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees." *Id.*  Moreover, it noted that the New Jersey Supreme Court entertained the constitutional issues raised by the plaintiff during judicial review. *Id.* at 436.  The high court reiterated that abstention is based upon the theory that "'[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'" *Id.* (citing *Younger*, at 45).  Choudhry must do the same here.  The state proceedings afford Choudhry an adequate opportunity to raise his constitutional claims.

### 3. Exceptional Circumstances

There are some exceptions to the *Younger* doctrine.  When state proceedings are brought in

bad faith or for the purpose of harassment, federal equitable principles justify intervention. There might also be "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Younger*, 401 U.S. at 53. Choudhry argues his case is exceptional for two reasons: (1) the state tribunal is biased and (2) he will suffer irreparable injury absent relief.

### a. Bad Faith and Bias

Choudhry argues that bad faith and bias preclude *Younger* abstention. He contends that the "outcome [of the disciplinary proceedings] is all but preordained." Mot. at 21. The bar for establishing bias is high. "Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Withrow v. Larkin*, 421 U.S. 35, 56 (quoting *U.S. v. Morgan*, 313 U.S. 409, 421 (1941)). Only in rare situations is the probability of actual bias on the part of the decisionmaker too high to be constitutionally tolerable, like where "the adjudicator has a pecuniary interest in the outcome" or "has been the target of personal abuse or criticism from the party before him." *Id*. at 46-47; *see also Partington v. Gedan*, 961 F.2d 852, 862 (9th Cir. 1992) (bad faith requires an "allegation of repeated harassment by enforcement authorities with no intention of securing a conclusive resolution by an administrative tribunal or the courts [] or of pecuniary bias by the tribunal"). Courts do not normally consider assertions of bias prior to the completion of an adjudicative proceeding. *U.S. v. Litton Indus., Inc.*, 462 F.2d 14, 17 (9th Cir. 1972). "Only in the 'exceptional' case where the court is presented with undisputed allegations of fundamental administrative prejudice will the court interrupt the progress of the adjudicative hearing." *Id.*

Choudhry argues that President Napolitano and other administrators have shown bias. He claims Napolitano "describe[ed] his conduct – falsely – as 'grop[ing]'" and "order[ed]" UC administrators to institute a disciplinary proceeding "aimed at stripping him of his tenure and dismissing him from the University." Mot. at 6. Napolitano's quote about "groping," however, was not explicitly directed at Choudhry. In fact, it was included in a *Sacramento Bee* editorial directly following the editorial board's description of Professor Geoff Marcy's conduct as "serial

groping." Mehta Decl., Ex. 2.  Napolitano also did not "order" the Chancellor to "strip" Choudhry of his tenure, but rather directed him to "institute disciplinary proceeding against Mr. Choudhry through the Privilege and Tenure process." *Id.*, Ex. 1.  She did not recommend any particular sanction and the available sanctions include several short of termination.  *Id.*, Ex. 4.  Choudhry also points to the statements that Dirks and Steele made after his resignation: "we are under no illusion that a resignation could or even should bring this matter and broader, related issues to a close" and "we must move in the direction of stronger sanctions." Reply at 7.  The statements, on their face, relate to "this matter and broader, related issues."  While they indicate that the UC administrators may be working towards a policy of stronger sanctions, they do not establish that the Hearing Committee or the Chancellor cannot judge Choudhry's case fairly on the basis of its own circumstances.

Choudhry also alleges that bias taints the university's general atmosphere.  He notes that the specific individuals responsible for adjudicating his case will be drawn from the Academic Senate, a body that passed a motion to grant Sorrell an award for outstanding service to the university.  Mehta Decl., Ex. 7.  These allegations are insufficient to impute bias on the yet unannounced members of the hearing committee.  *See Kenneally v. Lungren*, 967 F.2d 329, 334 (9th Cir. 1992) (refusing to impute bias from some members of an agency to others).  Choudhry provides no specific or actual proof of bias on the part of any person responsible for adjudicating his case, nor could he because those people have not yet even been selected.  Moreover, the Academic Senate procedures specifically provide for recusal of any committee member who cannot fairly review his case.  While Choudhry has provided some allegations of potential bias, none overcomes the presumption of honesty or suggests that the UC began its proceedings solely to harass him.  His allegations of bias are insufficient to justify interruption of the UC proceedings.

### b. Irreparable Injury

Choudhry also argues that *Younger* abstention is inappropriate because he will suffer irreparable harm if the UC proceedings continue.  He says: "Either this Court hears his claims now, or Defendants inflict irreparable harm, period." Reply at 6.  To establish an exception to

*Younger*, a plaintiff must be facing an irreparable injury that is both "great" and "immediate." *Younger*, 401 U.S. at 46.[4]

Choudhry relies on *Mannes v. Gillespie*, 967 F.2d 1310 (9th Cir. 1992). There, the Ninth Circuit ruled that "a claim that a state prosecution will violate the Double Jeopardy Clause presents an exception to the general rule of *Younger*." *Id*. at 1312. Choudhry cites no authority for extending *Mannes* outside the narrow criminal context where defendants are entitled to special protections. Indeed, "the mere possiblity of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." *Dombrowski v. Pfister*, 380 U.S. 479, 484-85 (1965). Generally, post-administrative hearing judicial review of constitutional challenges is sufficient. *See Ohio Civil Rights Comm'n*, 477 U.S. at 629; *Middlesex*, 457 U.S. at 436; *Robinson v. California State Bar*, No. 15-MC-80129-JD, 2015 WL 3486724, at *5 (N.D. Cal. May 28, 2015). For this reason, courts have applied *Younger* in comparable cases, even where plaintiffs have alleged due process violations. *See Sanchez,* 2015 WL 6956288, at *4 n.3; *Ingber*, 2014 WL 2575780, at *1.

Choudhry's allegations of immediate injury do not rise to the exceptionally high level required to warrant federal judicial intervention. Absent relief, Choudhry faces the stress of a second proceeding and expense of defending himself. "Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61 (1974); *see also Younger*, 401 U.S. at 46 (recognizing that financial injuries that are "incidental to every criminal proceeding brought lawfully and in good faith" do not constitute great and irreparable injury in the legal sense). Choudhry argues he is currently "unable to go to work or teach," Mot. at 20, but he is still a tenured faculty member, paid

---

[4] *Younger* suggests that irreparable injury may possibly be established by showing that a challenged state statute is "'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Id*. at 53-54 (citation omitted). In *NOPSI*, the Supreme Court considered whether *Younger*'s "posited exception for state statutes 'flagrantly and patently violative of express constitutional prohibitions' ought to apply equally to state proceedings and orders flagrantly and patently violative of . . . constitutional prescription[s]." 491 U.S. at 367. It declined to decide the matter "since the proceeding and order at issue d[id] not meet that description." *Id*. Choudhry does not argue that his case falls within this specific exception.

by the university, with research and administrative duties and an office in a university building. The "disruption of workers' lives and habits" does not generally threaten irreparable harm. *Graphic Commc'ns Conference--Int'l Bhd. of Teamsters Local 404M v. Bakersfield Californian*, 541 F. Supp. 2d 1117, 1125-26 (E.D. Cal. 2008); *see also Levich v. Liberty Cent. Sch. Dist.*, 258 F. Supp. 2d 339, 344–45 (S.D.N.Y. 2003) (no irreparable harm where "plaintiff has not been suspended from his employment duties and continues to be employed by the School District, receiving full pay and benefits"). Though the stress and expense of the UC proceedings may be substantial, these immediate injuries do not justify federal interference with the activities of the state.

## V. CONCLUSION

An injunction is not warranted on this record. *Younger* and its progeny require that federal courts abstain from interfering with ongoing state proceedings absent bad faith, harassment or other exceptional circumstances. No such exceptional circumstances have been shown. For this reason, Choudhry's motion for preliminary injunction is denied.

**IT IS SO ORDERED**.

Dated: November 9, 2016

RICHARD SEEBORG
United States District Judge